IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAVIER LUNA, #M04122, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 11-CV-886-NJR-DGW |
| | ) |
| DR. SHEPPARD, DR. WAHL, DR. SHUTE, MARSHA HILL, NURSE LAND, and NURSE MARSH, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Now pending before the Court is a motion for summary judgment filed by Defendants Dr. John Shepherd, Dr. Jill Wahl, Dr. Richard Shute, Nurse Mary Beth Lane, and Nurse Marsha Hill on January 21, 2014 (Doc. 81).[1]  For the reasons set forth below, the motion is granted.

### INTRODUCTION

Plaintiff, Javier Luna, an inmate at Pinckneyville Correctional Center, filed suit on September 29, 2011, pursuant to 42 U.S.C. § 1983, concerning medical care he received from Defendants beginning in October 2009.  In particular, Plaintiff alleges that Defendants were deliberately indifferent to his acid reflux disease and two hernias

---

[1] The Clerk of Court is directed to correct the docket sheet to reflect the true and full spelling of Defendants' names as outlined in this Order. The Court notes that Defendant Nurse Marsh was dismissed on September 11, 2013, when it was determined that Defendant Marsha Hill and Defendant Nurse Marsh were the same person (*see* Docs. 65, 67).

located in his esophagus and stomach, which caused great pain, interrupted sleep, and rendered him unable to engage in recreational activities. Defendants moved for summary judgment on January 21, 2014 (Doc. 81). Plaintiff, through counsel, responded on April 25, 2014 (Doc. 87), and Defendants filed a timely reply (Doc. 88).

## BACKGROUND

The undisputed evidence reveals that Plaintiff began suffering from gastroesophageal reflux disease ("GERD"),[2] antral diverticulum,[3] and a hiatal hernia[4] in September 2009 (Defendants' Statement of Undisputed Facts ("DSUF") ¶ 9). These conditions caused difficulty breathing and swallowing food (DSUF ¶ 10).

Plaintiff first saw Defendant Marsha Hill, a nurse, on October 13, 2009 (DSUF ¶ 11).[5] During that visit, Plaintiff was prescribed 30 Maalox tabs, told to continue taking

---

[2] GERD is a "condition wherein you have excessive acid formation . . . so you can have either sour stomach, you could have heartburn-type symptoms, or you can have like a lump in your throat or bad breath because of the acid coming out from the stomach to the esophagus" (John Shepherd Deposition, Doc. 87-1, pp. 22-23). It is generally treated first by lifestyle changes, then by antacids and other types of medication, and then testing would be recommended (EGD and x-ray) (Shepherd Dep. pp. 23-29).

[3] "A diverticulum is basically an outpouching, so antrum is the first portion of the duodenum, the antrum, so there's basically an outpouching" (Shepherd Dep. pp. 40-41).

[4] A hiatal hernia is "a defect in the gastroesophageal junction, basically. That's the portion between the esophagus and the stomach itself" (Shepherd Dep. pp. 39-40). It commonly causes reflux and would be treated no differently than GERD (*Id.* at 40).

[5] In his response to Defendants' statements of undisputed fact that relate to Plaintiff's medical records, Plaintiff states "[t]he medical records attached do not establish the absence or presence of a genuine dispute as they are medical records subject to interpretation." He does not otherwise deny or admit the fact nor does he present any evidence that would contradict the facts gleaned from the medical record. Plaintiff further does not argue that the medical records are inadmissible. Plaintiff is relying on Federal Rule of Civil Procedure 56(c)(1)(B); however there is no "showing" that the medical records, "do not establish the absence or presence of a genuine dispute." Absent a valid argument that the medical records are inadmissible or

Alkalak, and directed to maintain a liquid diet for twenty four hours (DSUF ¶ 11). Plaintiff was next seen by Nurse Hill on March 25, 2010, and she noted that he was taking Prilosec; Nurse Hill gave him Maalox to take with meals and again instructed him to maintain a liquid diet for twenty four hours (DSUF ¶ 12). Nurse Hill's next encounter with Plaintiff was on April 8, 2010, when she attempted to see Plaintiff, but he refused the sick call (DSUF ¶ 13).

Plaintiff was first seen by Defendant Jill Wahl, a physician, on June 1, 2010. Dr. Wahl examined Plaintiff (he complained of breathing difficulty and a sore throat), noted that he was taking Prilosec for GERD, and prescribed an antihistamine for his respiratory issues (DSUF ¶ 15). Dr. Wahl again saw Plaintiff on July 8, 2010. At that time, Plaintiff indicated that (1) he had lost ten pounds in the last year, (2) he continued to have abdominal pain even though he was taking Prilosec, (3) he only experienced temporary relief when he took Pepto-Bismol, and (4) he felt like food was getting stuck in his throat (DSUF ¶ 16). Dr. Wahl prescribed Mylanta and sought a GI consult (*Id.*). Upon discussing Plaintiff's condition with other physicians, which Defendants term "Collegial Review," it was determined that an Esophagogastroduodenoscopy (EGD) would be performed on Plaintiff (DSUF ¶ 17-18). Upon seeing Plaintiff again on August 5, 2010, Dr. Wahl prescribed Prilosec and Zantac because Plaintiff reported that it was "his best regimen of medication" (DSUF ¶ 20).

The EGD was performed on August 19, 2010, by Dr. Thomas of Touchette/Kenneth Hall Regional Hospital. This test revealed that Plaintiff had "distal

---

contrary to other evidence, the Court will consider the facts set forth therein.

nonerosive esophagitis, inflammation of the esophagus, a hiatal hernia and antral diverticulum" (DSUF ¶ 21). As a result, Dr. Wahl "ordered a comprehensive metabolic panel and requested motility testing" (*Id.*).[6] Another Collegial Review was performed on August 23, 2010, in which it was determined that increasing Plaintiff's Prilosec dose, as suggested by Dr. Thomas, would not be beneficial because Plaintiff had been prescribed the same from May 2010 to August 2010 without success; the Collegial Review also determined that Plaintiff should be prescribed Reglan, which would be prescribed if a motility study was done and "was positive for delayed transit" (DSUF ¶ 22).

Plaintiff first saw Defendant Mary Beth Lane, a nurse, on August 26, 2010. During this visit, Plaintiff complained of his stomach feeling full (DSUF ¶ 24). Nurse Lane examined him and found that his abdomen was not distended. Plaintiff denied constipation. Nurse Lane told Plaintiff to increase his fluid intake and follow up with the healthcare unit as needed (*Id.*).

On September 2, 2010, Dr. Wahl prescribed Reglan, as agreed upon at the Collegial Review on August 23, 2010, and told Plaintiff to eat small, frequent meals (DSUF ¶ 25). A few weeks later, on September 18, 2010, Plaintiff was again seen by Nurse Hill in conjunction with Dr. Fahim (who is not a party to this suit), and an x-ray was ordered to rule out kidney stones (DSUF ¶ 26). The x-ray was conducted on September 21, 2010, and revealed no significant findings (DSUF ¶ 27).

---

[6] Motility testing is "where the patient swallows a substance to see how quickly it passes" through their gastrointestinal system (Jill Wahl Deposition, Doc. 87-3, p. 47).

Plaintiff first saw Dr. John Shepherd, a physician, on October 31, 2010. At that time, Plaintiff complained of lower abdominal pain, especially during urination (DSUF ¶ 29). Dr. Shepherd examined Plaintiff, reviewed his EGD, and found no urinary abnormalities. He prescribed Prilosec and ordered a urinalysis (which was negative) (*Id.*). Dr. Shepherd saw Plaintiff again on November 1, 2010, with the same complaints along with excessive gas; Dr. Shepherd prescribed antibiotics and Mylicon-80 to relieve excessive gas (DSUF ¶ 30). Plaintiff last saw Dr. Shepherd on November 19, 2010. At that visit, Plaintiff complained of excessive gas and abdominal pain, but said his symptoms had improved. Dr. Shepherd continued Plaintiff's Prilosec prescription (DSUF ¶ 31).

Plaintiff then began seeing Defendant Richard Shute, also a physician, beginning on December 8, 2010. Plaintiff reported that Prilosec was not providing relief, and Dr. Shute discontinued that medication in favor of Reglan (DSUF ¶ 32). Next, Plaintiff saw Nurse Hill on March 26, 2011; he was instructed on a proper diet and directed to drink plenty of fluids and to take antacid tablets. When Plaintiff again was seen by Nurse Hill on March 28, 2011, she referred him to a doctor to evaluate his symptoms (DSUF ¶ 34-35). Dr. Shute accordingly saw Plaintiff on March 29, 2011; Dr. Shute discontinued Reglan and prescribed Pepcid (DSUF ¶ 36).

The last defendant to see Plaintiff was Nurse Hill, on April 11, 2011, and June 7, 2013. She referred him to a doctor and saw him in conjunction with Dr. Shah (who is not a defendant in this lawsuit). There is no evidence in the record that any doctor, to the present day, has performed surgery to alleviate Plaintiff's symptoms.

In summary, the evidence reveals that Plaintiff began suffering from gastrointestinal conditions beginning in September 2009. His condition caused trouble breathing and swallowing, weight loss (twenty pounds from September 2009 to July 2010), and stomach pain (Javier Luna Deposition, Doc. 87-4, p. 23). While he saw a nurse for his condition initially, he did not see a doctor until June 1, 2010. His encounters with Defendants in this matter occurred on October 13, 2009 (Nurse Hill), March 25, 2010 (Nurse Hill), April 8, 2010 (Nurse Hill), June 1, 2010 (Dr. Wahl), July 8, 2010 (Dr. Wahl), August 5, 2010 (Dr. Wahl), August 26, 2010 (Nurse Lane), September 2, 2010 (Dr. Wahl), September 18, 2010 (Nurse Hill along with Dr. Fahim), October 31, 2010 (Dr. Shepherd), November 1, 2010 (Dr. Shepherd), November 19, 2010 (Dr. Shepherd), December 8, 2010 (Dr. Shute), March 26, 2011 (Nurse Hill), March 28, 2011 (Nurse Hill), March 29, 2011 (Dr. Shute), April 11, 2011 (Nurse Hill), and June 7, 2013 (Nurse Hill along with Dr. Shah). He was prescribed Alkalak, Maalox, Prilosec, Mylanta, Zantac, Pepcid, and Reglan from his initial complaint in September 2009 to March 2011, a period of nineteen months. Plaintiff also underwent an EGD on August 19, 2010, and an x-ray on September 21, 2010. He was counseled on proper diet and fluid intake and referred to doctors by Nurse Hill on March 28, 2011, and April 11, 2011. Plaintiff testified that none of the medications worked from more than a couple of hours and that no medications provided him the relief that he was seeking (Luna Dep. p. 32).

In addition, Plaintiff testified that each of the doctors, Defendants Shepherd, Shute, and Wahl, told him that if medications did not work, they would refer him for surgery (Luna Dep. pp. 60-61). But nothing in the medical record or the doctors'

depositions suggests that Plaintiff was referred for surgery for his condition.

## STANDARD

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

## DISCUSSION

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, a plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted).

The following circumstances could constitute a serious medical need: "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). *See also Foelker v. Outagamie County*, 394 F.3d 510, 512-513 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

As for the requisite state of mind, a prisoner must show that prison officials acted with deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either

deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Put another way, Plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653.

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (citations omitted). A plaintiff does not have to prove that his complaints of pain were "literally ignored," but only that "the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes*, 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)). "Even if the defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 843).

Plaintiff's GERD, hernias, and antral diverticulum were of sufficient seriousness to warrant (and receive) treatment and testing by Defendant medical providers over the course of many months. Plaintiff testified that his conditions caused pain, made him lose weight, and caused trouble breathing and swallowing. In light of this testimony,

Defendants' argument that "Plaintiff's acid-related stomach conditions are not mandating treatment [sic] or so obvious that a lay person would easily recognize the necessity for a doctor's attention" is puzzling (Doc. 82, p. 12). It would be odd and illogical for Defendants to actually treat Plaintiff, for a significant period of time, if indeed he had no condition that required treatment. Accordingly, the Court finds that Plaintiff had (and has) a serious medical condition.

Plaintiff argues that Defendants exhibited deliberate indifference to his condition by merely rotating prescriptions of medicine (that provided no relief), pursuing a course of conservative treatment that was not working, and failing to schedule Plaintiff for surgery. According to Plaintiff, the lack of continuity of medical providers and the failure to provide prescribed medications contributed to the lack of effectual treatment for his condition. Plaintiff urges the Court to consider the claims against each of the individual Defendants together and find that whether Defendants, as a whole, were deliberately indifferent to Plaintiff's medical needs is a question that should be left to a jury. Notwithstanding these arguments, the Court finds that there are no material facts in dispute, and Defendants are entitled to judgment as a matter of law.

The evidence reveals that Plaintiff sought, and was regularly given, medical care to address his gastrointestinal problems. The fact that the care he received did not entirely resolve his issues, or was not the type of care that he wanted, cannot support an Eighth Amendment claim. *Gutierrez*, 111 F.3d at 1374 ("medical malpractice in the form of an incorrect diagnosis or improper treatment does not state an Eighth Amendment claim"). Plaintiff was examined and prescribed various and different medications in

order to alleviate his symptoms. There is no showing that these medications would be inappropriate for Plaintiff's medical condition or that attempting to find the correct combination of medications to alleviate Plaintiff's symptoms was inappropriate. There is also no showing that any Defendant prevented Plaintiff from acquiring the medications prescribed. After some medications were not working as well as the medical providers expected, he was given further diagnostic tests, the EGD, and an x-ray. These tests were unremarkable and, in lieu of the recommended motility testing suggested by Dr. Thomas, Dr. Wahl prescribed the very medication, Reglan, that would have been prescribed had the motility test been performed. Plaintiff then was placed on different medications (that he indicated were helpful) in order to alleviate his symptoms. Over the course of the nineteen months relevant to this suit, Plaintiff was examined or seen by a Defendant seventeen times and evaluated by three separate doctors. Significantly, there is no showing that any other medical provider, including Dr. Fahim and, later, Dr. Shah, have suggested different types of treatment or even surgery. This level of medical care does not exhibit deliberate indifference.[7]

Plaintiff's main sticking point is that after the medication proved to be ineffective, he should have undergone surgery to alleviate his symptoms. Plaintiff indicated in his deposition that each of the defendant doctors told him that if the medications would not work, they would recommend surgery. Yet none of the defendant doctors themselves

---

[7] Plaintiff refers to gastroenterology guidelines published by Wexford Health Sources, Defendants' employer and provider of medical services within the IDOC, but does not specify how the care provided fell short of the guidelines. Plaintiff also offers no argument or evidence that these guidelines are mandatory or that they are suggestive of reasonable medical standards. There is no policy or procedure claim made in this lawsuit.

indicated that they would have suggested surgery,[8] and it is unclear what type of surgery Plaintiff expected. In any event, the fact that Plaintiff did not get the treatment of choice cannot form the basis of an Eighth Amendment claim. And, there has been no showing that "defendants' responses [to his medical condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes*, 546 F.3d at 524. Plaintiff presented with GERD, an antral diverticulum, and hiatal hernia; he was counseled on proper diet, examined, given antacids and various other medications to alleviate his symptoms, and underwent diagnostic testing; he was being seen almost monthly by a medical professional. No jury would find that such care was deliberately indifferent.

Defendants also argue that they are entitled to qualified immunity. In light of the foregoing, this remaining argument is moot. *See Delgado-Brunet v. Clark*, 93 F.3d 339, 344-345 (7th Cir. 1996) (noting that when a Court finds that there is no genuine issue of fact as to a claim, analysis of the underlying claim and analysis of the qualified immunity claim "effectively collapse into one"). Nonetheless, in determining whether Defendants

---

[8] Defendant Shepherd stated in his deposition that he would leave decisions about whether surgery was recommended for Plaintiff's conditions to a specialist (Shepherd Dep. p. 40). Defendant Shute indicated that surgery "always has been" a treatment option, but that he probably never has suggested surgery (Richard Shute Dep., Doc. 87-2, p. 31). He qualified by saying that: "Well, I need to mention that they don't do a whole lot of repairs of hiatal hernias, mainly because the medications are so good these days. There's a wide variety of them. They're very effective. And of course going the surgery route brings on a chance of the complications that all surgery has. And the other big point is that a high percentage of these people that actually go on to have hiatal hernia surgery repairs, they end up back taking the same pills they're on before to block the acid. For some reason, they loosen up over time again" (*Id.*). Moreover, Defendant Wahl testified that during her treatment of Plaintiff she did not believe that surgery was an "appropriate option" (Wahl Dep. p. 71).

are entitled to qualified immunity, the Court must consider two questions: (1) "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"; and, (2) was "the right clearly established?" *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Because no jury would find that Defendants violated Plaintiff's Eighth Amendment rights, as indicated above, Defendants are entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment filed by Defendants John Shepherd, Jill Wahl, Richard Shute, Mary Beth Lane ("Nurse Land"), and Marsha Hill (Doc. 81) is **GRANTED,** and this action is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to correct the names of each Defendant as set forth in this order and to enter judgment in favor of all Defendants and against Plaintiff.

**IT IS SO ORDERED.**

**DATED:   October 10, 2014**

s/ Nancy J. Rosenstengel
**NANCY J. ROSENSTENGEL**
**United States District Judge**
